## 6013.   LYON *v.* GRIFFIN.

A transferee, under an assignment made "without recourse," of a landlord's
lien for supplies advanced to aid in the making of a crop, who has the
right to foreclose upon the maturing crop, but who neglects to exercise
this right, preferring to rely merely upon the oral promise of the land-
lord to pay the debt of his cropper, to whom the supplies were advanced,
can not force the landlord to apply to the payment of the transferred
lien any proceeds of the crop remaining in the landlord's hands and due
as wages to the cropper who executed the lien; nor can such a trans-
feree recover, by an action ex delicto, damages from the landlord for
refusal to pay to the transferee the cropper's share of the crop, when
the cropper has not authorized such application of his wages.

DECIDED SEPTEMBER 2, 1915.

Action for damages; from city court of Cartersville—Judge
Moon.   September 22, 1914.

*J. T. Norris,* for plaintiff in error.   *Neel & Neel,* contra.

RUSSELL, C. J.   The assignments of error in this case are based
upon a judgment overruling a demurrer to the petition.   The peti-
tion shows that the defendant, Mrs. Lyon, induced the plaintiff,
Mrs. Griffin, to furnish to two tenants of Mrs. Lyon, named Hen-
drix, supplies to make crops for the year 1913 on the rented
premises.   To secure the payment of the indebtedness thus created,
Mrs. Lyon took from each tenant his note for $115 and a lien on
his crop, and transferred those two crop liens to Mrs. Griffin, who
furnished supplies to the tenants to the amount of the notes.   The
assignments recited that the liens were transferred "without re-
course" on Mrs. Lyon.   It is alleged in the petition that in August,
1913, the agent of Mrs. Griffin called by to see the crops of the two
tenants and found that Mrs. Lyon had taken charge of the crops
and was proposing to gather them with hired labor, and he pro-
posed to Mrs. Lyon that Mrs. Griffin would take charge of the
crops and gather them, but Mrs. Lyon refused to allow her to do
so, and herself proceeded to gather the crops and convert them to
her own use, and refused to pay Mrs. Griffin the sum due on the
crop lien or any portion thereof.   The petition alleges that one of
the tenants made 9 bales of lint cotton, averaging 500 pounds each,
and 270 bushels of cottonseed, and the other tenant made 8 bales
of cotton, averaging 500 pounds each, and 240 bushels of cotton-
seed, and that the value of the cotton was 13 cents per pound, and
the cottonseed was worth 40 cents per bushel, making an aggregate
of $1,309.   All this, it is alleged, Mrs. Lyon appropriated to her

own use, besides the corn crops raised by the tenants. The petition further alleges, that the tenants are insolvent, and that the plaintiff can not collect the debt from them; that the tenants cultivated the defendant's lands on an agreed rental value of one half of the crops raised, and that these crops were cultivated until "laid by, or practically so," and that what (if anything) was lacking in their cultivation did not cost the defendant as much as $15, and the cost of gathering the crop did not exceed $10 per bale for the cotton. It is further alleged that the defendant, while engaged in gathering the crops of the tenants, acknowledged her liability to account to the plaintiff for the crops, and admitted that the proceeds thereof were subject to the crop liens. Demand and refusal to pay the debt are alleged.

The demurrer contained 16 grounds, but we do not deem it necessary to deal with each specifically, for, in our opinion, the trial judge should have sustained the general demurrer and dismissed the petition. It is plain, from the allegations of the petition, that the transfer of the landlord's lien by Mrs. Lyon, which contained an express stipulation that the transfer was made without recourse on her, imposed no contractual duty upon her. Mrs. Griffin was given all the rights as to the tenants which the law conferred upon Mrs. Lyon, but Mrs. Lyon, for herself, assumed no responsibility, and in fact expressly disclaimed any assumption of liability. In the absence of any allegation that the transfer was made in fraud, it is immaterial what parol agreements may have been made before the transfer of the landlord's lien to Mrs. Griffin. All of the prior negotiations were merged in the written contract or transfer. By this transfer Mrs. Griffin was clothed with all the rights which are given by sections 3343, 3344, and 3345 of the Civil Code. But the reservation by which Mrs. Lyon made the transfer without recourse on herself relieved her of any liability to Mrs. Griffin. We agree with learned counsel for Mrs. Griffin that the action is clearly not one ex contractu, nor an attempt to proceed in equity in a city court. The petition seeks to present an action ex delicto, and the only question is whether the acts of Mrs. Lyon, alleged in the petition, amounted to such a tort as entitles Mrs. Griffin to a recovery in damages. It is apparent, as insisted by counsel for Mrs. Griffin, that the amounts of the advances represented in the transferred landlord's liens are stated merely as a

basis for fixing the amount of damages. To ascertain whether Mrs. Lyon has been guilty of a tort to Mrs. Griffin, an inquiry naturally must be made as to what duty she owed Mrs. Griffin, or what law she violated to the detriment of Mrs. Griffin's rights. There can be no recovery as for a tort growing out of Mrs. Lyon's breach of her written contract, for she did not obligate herself to pay anything or to guarantee anything. This idea is expressly excluded by the terms of the transfers. She contracted to pay Mrs. Griffin nothing; consequently there could be no damages growing out of the breach of her contract in transferring the landlord's liens; nor indeed is any breach of this contract alleged. Then, did Mrs. Lyon do any act in violation of law, by which damage accrued to Mrs. Griffin? The Civil Code, § 4403, defines a tort to be "a legal wrong committed upon the person or property, independent of contract. It may be either—1. A direct invasion of some legal right of the individual. 2. The infraction of some public duty, by which special damage accrues to the individual. 3. The violation of some private obligation, by which like damage accrues to the individual." The petition alleges that after transferring the liens to Mrs. Griffin, Mrs. Lyon took charge of her tenant's crops and gathered them and appropriated the proceeds of the sale of the crops to her own use. The petition alleges that the two Hendrixes were croppers of Mrs. Lyon. Therefore, under the law, Mrs. Lyon had the title to the crops, with the right to gather and sell them and hold the proceeds until she was fully paid, not only her rents, but any advances made by her to the croppers to aid in making and gathering the crops. Consequently, Mrs. Lyon acted within her legal rights in gathering and selling the crops after the croppers had left her premises. Even if (in violation of the general rule that upon demurrer the pleadings are to be strictly construed against the pleader) we were to construe the word "appropriated," as used in the petition, to mean that Mrs. Lyon wrongfully converted the funds in her hands, this would be immaterial here, for she was not authorized to pay any portion of the proceeds of the crop on the claim of Mrs. Griffin. Under the allegations of the petition, Mrs. Lyon may have been morally bound to pay Mrs. Griffin the amount of the two notes, because it is alleged that she promised, when gathering the crops, that she would do so. But under the statute of frauds this promise

is not enforceable, since any agreement to answer for the debt, default, or miscarriage of another must be reduced to writing.

However, properly construing the petition, the allegations of the twelfth paragraph amount to nothing more than a statement that Mrs. Lyon, with full knowledge of Mrs. Griffin's liens and that these liens were unpaid, has kept the proceeds of the crop and refused to comply with her promise to pay the debts of the two Hendrixes. As landlord, she could not (strictly speaking) "appropriate" the crops, because the title to the crops was in her, and only after having reserved the share of the crop due her as landlord, and after making a settlement with these croppers, would any of the proceeds of the crops belong to the croppers. The petition does not allege that the landlord was authorized by the croppers to pay off the liens at the time she began to gather the crops, or that she has ever been authorized by them to do so, and unless they had expressly authorized her to pay their debts to Mrs. Griffin, or either of them, she would have had no authority to do so even though she may have known that the debts were unpaid. A. can not protect himself from the requirement to pay to B. funds belonging to B. which may be in A.'s hands, by answering that he has paid them over to C., to whom he knew B. to be justly indebted. When Mrs. Griffin saw that Mrs. Lyon was gathering the crops, it was her right to foreclose the crop liens transferred to her by Mrs. Lyon, which placed her in a position as good as that which Mrs. Lyon would have occupied as landlord if Mrs. Lyon had not transferred her lien. But instead of foreclosing the lien which had been transferred to her, Mrs. Griffin, according to the petition, preferred to rely upon Mrs. Lyon's verbal promise to pay the debts of the two Hendrixes. As we view it, a tort on the part of Mrs. Lyon would not be shown unless it were expressly alleged that after payment of the rent and such advances as had been made by her, and for which she might have a lien other than that transferred to Mrs. Griffin (if she was entitled to such a lien), there remained a balance in Mrs. Lyon's hands, as landlord; and that Mrs. Lyon had refused to pay a duly executed written order given by the two Hendrixes, or either of them, directing the payment of the proceeds of their part of the crop to Mrs. Griffin. The plaintiff's case fails. (1) because there is no contractual relationship between the plaintiff and the defendant upon which a breach of a contractual

duty can be predicated; (2) because it appears from the petition that Mrs. Lyon, in taking and retaining possession of the crops, in the absence of any demand on the part of her croppers for a settlement, has acted only within her legal rights; and (3) because it is not alleged that after settlement with her croppers, there remained in the hands of the landlord any balance due to the croppers for their labor, or that the croppers had ever demanded a settlement; and even if this were true, it is not alleged that Mrs. Lyon was authorized by the croppers to pay over this amount on Mrs. Griffin's liens. It is perfectly clear to us that the landlord's refusal to pay to the transferee of the landlord's lien the proceeds of that portion of the crop which may be due the cropper who executed the lien does not entitle the transferee to recover damages in an action ex delicto, when the cropper has not expressly authorized or directed the landlord to make such application of the funds. It may be that, by proper equity proceedings in a court having jurisdiction thereof, and with the Hendrixes as parties, any overplus in the hands of the landlord which is the property of the Hendrixes might be subjected to the satisfaction of the liens in question. But even in a court of equity some reason (not apparent in the present petition pending in the city court of Cartersville) would have to be shown why Mrs. Lyon should be required to pay the debt of the Hendrixes.

Treating the petition as an action ex delicto, we conclude that the trial judge erred in overruling the general demurrer.

*Judgment reversed.*